## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROGER ROBLES, individually and on behalf of all
others similarly situated

       Plaintiff,

vs.                                                                     No. CIV 10-0135 JB/WPL

BRAKE MASTERS SYSTEMS, INC.; BRAKE
MASTERS OF NEW MEXICO, INC.; BRAKE
MASTERS HOLDINGS NMX, INC.; and BRAKE
MASTERS OF NEW MEXICO, LLC

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the parties' Joint Motion for Approval of

Collective Action Settlement and Dismissal, filed January 8, 2011 (Doc. 44)("Motion"); and (ii) the

parties' Supplemental Joint Motion for Approval of Collective Action Settlement and Dismissal,

filed January 25, 2011 (Doc. 49)("Supplemental Joint Motion"). The primary issues are: (i) whether

the parties' proposed settlement is fair to all parties, reasonably resolves a true disagreement

between the parties concerning the merits of the claims asserted in the action, and demonstrates the

parties' good intention to fully and finally resolve the claims; and (ii) whether the Court should

approve an incentive award to the named Plaintiff Roger Robles. The Court grants in part and

denies in part the parties' Motion, rejecting the proposed incentive award to Robles and otherwise

approving the Proposed Settlement Agreement.

## PROCEDURAL BACKGROUND

On February 16, 2010, Robles filed his Original Complaint on behalf of himself and others

similarly situated, alleging that Defendants violated provisions of the Fair Labor Standards Act,

29 U.S.C. §§ 201 through 219 ("FLSA").  See Doc. 1.  Robles alleges that he, and other Assistant Store Managers and Floating Managers working for the Defendants Brake Masters Systems, Inc.; Brake Masters of New Mexico, Inc.; Brake Masters Holdings NMX, Inc.; and Brake Masters of New Mexico, LLC, were denied overtime owed to them, because they were improperly classified as exempt from the FLSA's overtime compensation requirements.  See Original Complaint ¶¶ 7.01-7.08, at 7-8.  Robles also alleges that the Defendants violated the New Mexico Minimum Wage Act, N.M.S.A. 1978, §§ 50-4-1 through 50-4-33 ("MWA").  See Original Complaint ¶¶ 8.01-8.08, at 8-9.

On March 29, 2010, the Defendants filed their Answer to Complaint.  See Doc. 9.  In their Answer, the Defendants denied Robles' allegations.  The Defendants continue to deny any wrongdoing, and, assert that the Proposed Settlement Agreement is not an admission of any violation of law, statute, or regulation.  See Motion at 3.

On August 19, 2010, the parties attended mediation in Santa Fe, New Mexico.  The mediation culminated in the parties filing a Joint Stipulation of Settlement and Release and Motion for Preliminary Approval of Settlement, filed September 29, 2010 (Doc. 35).  The parties agreed to certify a Conditional Settlement Class including "all persons who are employed or have been employed by any of the Defendants in the capacity of an Assistant Store Manager or Floating Manager at any time from July 1, 2008 through" July 1, 2010.  Joint Stipulation of Settlement and Release and Motion for Preliminary Approval of Settlement ¶ 4, at 2.  See Agreed Order Preliminarily Approving Settlement and Authorizing Notice to Potential Plaintiffs and Conditional Certification, filed September 30, 2010 (Doc. 36)(specifying the relevant time period as "July 1, 2008 through July 1, 2010")("Preliminary Conditional Certification Order").

On September 30, 2010, the Court entered its Preliminary Conditional Certification Order.

The Court conditionally certified this matter as a collective action for settlement purposes only, ordering the parties to notify potential members of the Conditional Settlement Class of the proposed settlement and allowing them to opt-in to the settlement within sixty days.  See Preliminary Conditional Certification Order at 1-2.  The parties then disseminated the Court-approved Joint Notice of Settlement and Opportunity to File Consent to Join Form, filed September 29, 2010 (Doc. 35-1)("Notice"), to the putative class members by using a Court-approved third party administrator, Rust Consulting, Inc.  The Notice stated the formula the parties would use to determine each Collective Action Settlement Members' award, that the award may be proportionately reduced if the total of all awards exceeded $500,000.00, and that the Collective Action Settlement Members "will not have to pay attorney's fees, as they are addressed by the overall settlement."  Notice at 2-3.  The Notice made no mention of an incentive award to Robles.

Rust Consulting sent notices to the persons listed on a class list and requested, pursuant to the Court's Preliminary Conditional Certification Order, for each potential opt-in Plaintiff to complete a Court-approved Proof of Claim, filed September 29, 2010 (Doc. 35-2).  Rust Consulting mailed Notices to 160 potential Collective Action Settlement Members.  Robles was not included in the notice procedure, because, as Lead Plaintiff, he previously filed a consent to join form.  The Notice stated the formula the parties would use to determine each Collective Action Settlement Members' award, that the award may be proportionately reduced if the total of all awards exceeded $500,000.00, and that the Collective Action Settlement Members "will not have to pay attorney's fees, as they are addressed by the overall settlement."  Notice at 2-3.  The Notice made no mention of an incentive award to Robles.  Of the 161 potential Conditional Settlement Class members -- including Robles -- seventy-two have opted into this case by timely completing and returning the

required documentation; however, after review by the parties, only sixty-eight are "Qualified Claimants" as defined in the Joint Stipulation of Settlement and Release and Motion for Preliminary Approval of Settlement.   None of the potential Collective Action Settlement Members lodged objections.   These seventy-two Plaintiffs constitute the Collective Action Settlement Members.

On January 8, 2011, the parties filed their joint Motion.   Having agreed to resolve the disputed factual and legal issues in this case, the parties move this Court to approve the settlement reached between them.   The parties assert that they have carefully and exhaustively negotiated a settlement in this action.   The parties further assert that the settlement is the result of an adversarial process, and that the settlement reflects a fair and reasonable compromise over disputed issues.

Pursuant to the terms of the Proposed Settlement Agreement, the Collective Action Settlement Members will receive payments ranging from $41.05 to $22,305.97,[1] depending upon a number of variables, including length of employment, weekly salary, and bonuses earned.   Under the Proposed Settlement Agreement, each class member's award is the calculated using the following formula:

*(weekly gross pay) ÷ 54 hours × .5 × 14 hours × (number of weeks worked) × 2*

This formula is based on the parties' negotiated agreement that the settlement would be based on a fifty-four-hour work week with fourteen hours of overtime, with overtime paid at time-and-a-half, and the total award doubled for punitive damages.   The formula starts with a class member's total weekly pay, and divides that amount by fifty-four to determine the class member's hourly rate.   The

---

[1] On January 25, 2011, the parties filed their Supplemental Joint Motion, which included modifications to the calculations in the Proposed Settlement Agreement.   The Court bases its discussion of the Proposed Settlement Agreement on the Supplemental Joint Motion's modifications.

formula then divides the hourly rate in half to determine the overtime rate.  The overtime rate is multiplied by fourteen, based on the number of overtime hours to which the parties agreed, yielding the class member's award for one week.  This amount is multiplied by the number of weeks the class member worked during the relevant time period.  This total amount, which reflects the class member's compensatory damages, is doubled to reflect punitive damages, which are permitted under the FLSA.  See 29 U.S.C.A. § 216(b)("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").  The total sum of all the Collective Action Settlement Members' awards is subject to a $500,000.00 limit under the parties' Proposed Settlement Agreement,[2] and each class member's award is proportionately reduced if the limit is exceeded.  The sum of all the Collective Action Settlement Members' awards exceeded the limit, totaling over $650,000.00, so the Collective Action Settlement Members' awards were reduced.  Because of the proportionate reduction, instead of each multiplying the Collective Action Settlement Members' compensatory damages by a factor of two to determine the total award of compensatory and punitive damages, the effective factor is approximately 1.758, or roughly 76%.  Each class member still receives a complete compensatory award.

The Proposed Settlement Agreement includes $120,000.00 in Attorneys' fees for Robles' counsel.  Under the Proposed Settlement Agreement, attorneys' fees are not taken from the $500,000.00, but are paid from a separate allocation.  The settlement also includes a payment of

---

[2] The $500,000.00 limit is exclusive of attorneys' fees, litigations costs, and the Rust Consulting's costs.

$19,363.55 from the Defendants to Rust Consulting. The total settlement amount is $639,363.00 (hereinafter "Common Fund"), with attorneys' fee amounting to 18.77% of the Common Fund.

The parties also request that the Court approve a $9,869.79 incentive award for Robles for acting as class representative. See Supplemental Joint Motion at 2. The incentive award is in addition to Robles' $5,131.21 compensatory and punitive damages award under the Proposed Settlement Agreement. The parties contend that an incentive award is reasonable and fair, because "Robles initiated the lawsuit and spent a substantial amount of time assisting counsel in investigating and prosecuting his claims and those of the other class members he has successfully represented. . . . Robles also gave a deposition." Motion at 6. Robles' incentive award would be allocated from the $500,000.00 award fund, taken proportionately from the other Collective Action Settlement Members' awards.

On January 18, 2011, the Court issued a Minute Order notifying the parties that the Court is concerned about the proposed incentive award in the Proposed Settlement Agreement. The Court ordered the parties to notify the Court's Courtroom Deputy whether they want to brief this issue, send the Court a letter, have a hearing, or have the Court decide the issue based on the papers then before it. See Doc. 45. That same day, Robles responded with his Memorandum in Support of Proposed Incentive Award. See Doc. 46. Robles contends that the proposed incentive award recognizes his substantial individual contributions to and sacrifices for the prosecution of this case, and that the incentive award is consistent with the case law. Robles asserts that he worked diligently with his counsel throughout this litigation, including meeting with counsel numerous times, gathering information pertaining to the factual allegations of the Complaint and to other putative class members' experiences, submitting to a deposition, and traveling to Santa Fe to attend and

actively participate in mediation.  Robles further contends that, although he kept no records of his time, his counsel estimate that Robles expended at least forty and perhaps more than sixty hours assisting in the investigating and prosecuting this case.  Robles further contends that, having worked in the automotive repair industry in Albuquerque, New Mexico both before and since his employment for Brake Masters, Robles assumed the risk that filing this case might lead employers in the industry "black-listing" him.  Memorandum in Support of Proposed Incentive Award at 3. Robles asserts that, absent his efforts, the proposed settlement presently before the Court would not have been possible.

On January 21, 2011, the Defendants filed their Notice Regarding Proposed Incentive Award.  See Doc. 47.  The Defendants acknowledge that they agreed to each of the settlement terms as set forth in Motion and the Supplemental Joint Motion for Approval of Collective Action Settlement and Dismissal, filed January 25, 2011 (Doc. 49)("Supplemental Joint Motion"), including the incentive payment to Robles.  The Defendants, however, "take no position as to the legal authority for the amount of the incentive payment," and the Defendants represented that they have no objection to the Court exercising its discretion to modify Robles' incentive award without modifying the Defendants' total payout under the Proposed Settlement Agreement.  Motion and the Supplemental Joint Motion at 1.

On January 25, 2011, the parties filed their Supplemental Joint Motion, notifying the Court that they had identified an opt-in Plaintiff who is not a Qualified Claimant, Ronald LeBlanc. LeBlanc worked as a store manager during the relevant time period, and not as an assistant store manager or floating manager.  See Supplemental Joint Motion at 1.  Removing LeBlanc from the class reduces the number of Qualified Claimants from sixty-eight to sixty-seven.  The parties also

identified errors in some of the award calculations, which the parties corrected.  See Supplemental

Joint Motion at 2.

### LAW REGARDING INCENTIVE AWARDS TO CLASS REPRESENTATIVES

While the United States Court of Appeals for the Tenth Circuit has not had much occasion

to consider the propriety of providing incentive awards to class representatives, in a case addressing

whether an incentive award was appropriate for a party objecting to class certification, the Tenth

Circuit in UFCW Local 880 -- Retail Food Employers Joint Pension Fund v. Newmont Mining

Corp., 352 F. App'x 232 (10th Cir. 2009), stated that incentive awards for class representatives are

justified when a class representative is not forthcoming and "may" be justified when the class

representative undertakes risk, provides additional effort, or contributes expertise to prosecuting a

class action:

> "Incentive awards [to class representatives] are justified when necessary to induce
> individuals to become named representatives," but there is no need for such an award
> "if at least one [class member] would have stepped forward without the lure of an
> 'incentive award.'"  In re Synthroid Mktg. Litig., 264 F.3d 712, 722-23 (7th Cir.
> 2001).  Moreover, a class representative may be entitled to an award for personal risk
> incurred or additional effort and expertise provided for the benefit of the class.  See
> Parker v. Time Warner Entm't Co., L.P., 631 F. Supp.2d 242, 279 (E.D.N.Y. 2009)
> ("The amount of the incentive award is related to the personal risk incurred by the
> individual or any additional effort expended by the individual for the benefit of the
> lawsuit."  (quotation omitted)); Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D.
> 207, 257 (D.N.J. 2005) (same).

352 F. App'x at 235-36 (alteration in original).

Other Courts of Appeals have addressed when incentive awards are appropriate.  The Courts

of Appeals consistently assert that incentive awards for class representatives are justified to give

incentive to a class representative to come forward when none are forthcoming, and to compensate

a class representative for risks they take and work they perform on behalf of the class.  In Rodriguez

v. West Publishing Corp., 563 F.3d 948 (9th. Cir. 2009), the United States Court of Appeals for the

Ninth Circuit held that "incentive agreements entered into as part of the initial retention of counsel"

created impermissible conflicts of interest, because they "bind counsel to apply for an award." 563

F.3d at 959.  The Ninth Circuit contrasted incentive *agreements* with incentive *awards*, stating:

> Incentive *awards* are fairly typical in class action cases.  See 4 William B. Rubenstein et al.,
> Newberg on Class Actions § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P.
> Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L.
> Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and
> 2002 included an incentive award to class representatives).  Such awards are discretionary,
> see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000), and are intended
> to compensate class representatives for work done on behalf of the class, to make up for
> financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize
> their willingness to act as a private attorney general.  Awards are generally sought after a
> settlement or verdict has been achieved.

563 F.3d at 958-59 (emphasis in original).

In Hadix v. Johnson, 322 F.3d 895 (6th Cir. 2003), the United States Court of Appeals for

the Sixth Circuit affirmed a district court's denial of a prisoner's motion for an incentive award as

class representative, because the settlement agreement did not provide for an award, stating:

"Although we think there may be circumstances where incentive awards are appropriate, we need

not resolve the difficult issue of detailing precisely when they are appropriate."  322 F.3d at 898.

The Sixth Circuit elaborated:

> Incentive awards are typically awards to class representatives for their often
> extensive involvement with a lawsuit.  Numerous courts have authorized incentive
> awards.  See Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998); In re U.S.
> Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir.), cert. denied, 537 U.S. 823 . . . (2002);
> In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 463; see also In re S. Ohio Corr.
> Facility, 175 F.R.D. 270, 273 & n. 3 (S.D. Ohio 1997) (collecting cases).  These
> courts have stressed that incentive awards are efficacious ways of encouraging
> members of a class to become class representatives and rewarding individual efforts
> taken on behalf of the class. Yet applications for incentive awards are scrutinized
> carefully by courts who sensibly fear that incentive awards may lead named plaintiffs
> to expect a bounty for bringing suit or to compromise the interest of the class for

> personal gain. See 2 Herbert Newberg & Alba Conte, Newburg on Class Actions §
> 11.38, at 80-81 (3d ed.1992) (noting that "[t]he propriety of 'incentive' awards to
> named plaintiffs has been rigorously debated"); see also Cohen v. Resolution Trust
> Corp., 61 F.3d 725, 728 (9th Cir.1995) (holding that "'[w]hen a settlement explicitly
> provides for preferential treatment for the named plaintiffs in a class action, a
> substantial burden falls upon the proponents of the settlement to demonstrate and
> document its fairness'") (citation omitted).

322 F.3d at 898 (emphasis added).

In Cook v. Niedert, 142 F.3d 1004 (7th Cir. 1998), the United States Court of Appeals for

the Seventh Circuit set forth factors a district court should consider when determining whether to

approve an incentive award:

> Having resolved the issues surrounding the attorney's fees, we address the final
> matter raised by the Fund -- the propriety of Archie Cook's $25,000 incentive award.
> Because a named plaintiff is an essential ingredient of any class action, an incentive
> award is appropriate if it is necessary to induce an individual to participate in the
> suit. See In re Continental, 962 F.2d [566,] 571 [(7th Cir. 1992)]. In deciding
> whether such an award is warranted, relevant factors include the actions the plaintiff
> has taken to protect the interests of the class, the degree to which the class has
> benefitted from those actions, and the amount of time and effort the plaintiff
> expended in pursuing the litigation. See Spicer v. Chicago Bd. Options Exchange,
> Inc., 844 F. Supp. 1226, 1267 (N.D. Ill.1993).

142 F.3d at 1016 (emphasis added).  The Seventh Circuit held that these factors were satisfied by

a class representative who reasonably feared workplace retaliation, contributed hundreds of hours,

provided substantial information, and the case produced a thirteen-million dollar award and

reformation of the fund he alleged was mismanaged:

> Here these factors are readily satisfied.  Cook brought a suit that resulted in structural
> reforms to the Health & Welfare Fund as well as a cash recovery of more than $13
> million.  In findings that were well-supported by the evidence, Special Master
> McGarr noted that Cook spent hundreds of hours with his attorneys and provided
> them with an "abundance of information."  Most significantly, the special master
> found that, in filing the suit, Cook reasonably feared workplace retaliation.  In light
> of the benefit Cook bestowed on his class, the risks he faced in bringing the case and
> the time he spent pursuing it, Judge Manning did not err when she approved a
> $25,000 incentive award.  Accordingly, the case is AFFIRMED.

142 F.3d at 1016.

In Montgomery v. Aetna Plywood, Inc., 231 F.3d 399 (7th Cir. 2000), the Seventh Circuit

held that a district court was within its discretion to deny the lead plaintiff an incentive award,

because the class counsel had not made a "serious argument" in favor of an incentive award, the

class notice had not adequately disclosed the incentive award, and the class counsel had not

explained why the incentive award could not be paid out of its fees:

> Finally, we take up class counsel's challenge to the district court's decision
> to deny the lead plaintiff an incentive award for his participation in this case.
> Incentive awards are appropriate if compensation would be necessary to induce an
> individual to become a named plaintiff in the suit.  Cook, 142 F.3d at 1016;
> Continental Ill. Sec. Litig., 962 F.2d at 571-72.   Counsel claims that the
> circumstances of the lead plaintiff's participation require that he be awarded $30,000
> out of the settlement fund.  Without directly addressing whether the lead plaintiff's
> participation justified an incentive award, the district court gave three reasons for
> refusing to grant such an award: (1) counsel's failure to make any serious argument
> in favor of granting such an award (especially in the amount requested); (2) counsel's
> failure to include in the most recent notice to the class adequate information
> regarding counsel's plan to seek an incentive award; and (3) the possibility that
> counsel could pay an incentive award out of the fees awarded it.
>
> Although the district court's last reason for its ruling is not a particularly
> persuasive one, the other two carry significant weight.  Counsel's uncertain and less
> than vigorous efforts to seek an incentive award in the district court can reasonably
> be interpreted as an abandonment of its request for such an award.  In any event, the
> case for granting the lead plaintiff in this case an incentive award is not so
> overwhelming as to remove any doubt about whether an award would be appropriate.
> While the lead plaintiff was the only named plaintiff, was subjected to a rough
> deposition, and was portrayed by the Montgomery defendants in an unfavorable light
> during the litigation, it does not appear that he had to devote an inordinate amount
> of time to the case or that, as a former employee, he suffered or risked any retaliation
> by Aetna Plywood.  Accordingly, we conclude that the district court did not abuse
> its discretion in refusing to grant the lead plaintiff an incentive award.

231 F.3d at 410 (emphasis added).

Courts "have denied preferential allocation on the grounds that the named plaintiff may be

tempted to settle an action to the detriment of the class or come to expect a 'bounty' for bringing

-11-

suit." 4 W. Rubenstein, A. Conte & H. Newberg, supra § 11:38, at 80-81 (footnote omitted).  In Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003), the Ninth Circuit reversed a district court's approval of a settlement agreement based in part on incentive awards to the class representatives. The Ninth Circuit was concerned that the incentive award was unjustified, might reflect collusion, and might create an undesirable incentive for parties to seek to be class representatives solely to increase the amount they receive in a settlement:

Awards to Named and Unnamed Class Members

One other aspect of the settlement agreement also raises serious concerns as to its fairness, adequacy and reasonableness.  The 237 people who are [individually identified recipients ("IIRs")] (and have not opted out) would each receive, on average, sixteen times greater damages than each of the unnamed class members; the subgroup of IIRs who are class representatives would receive even more relative to the class as a whole.  While a point-based formula is used to distribute the damages fund among the rest of the class members who make claims, no such objective standards were applied in determining who would be paid as an IIR or in what amount.  We find no sufficient justification in the record for this differential in the amount of damage awards and the process for awarding them.

The district court "considered this disparity carefully because excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion."  Indeed, "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

Although the district court expressed concern about the differential in damage awards, the court ultimately concluded that the settlement was reasonable, explaining that the named plaintiffs are "the group of class members identified by plaintiffs' counsel as having the strongest claims and thus as providing the strongest foundation for the lawsuit.  Because they have the strongest claims it is fair that they would receive the largest awards."  The record does not, however, support this explanation.

. . . .

[S]pecial rewards for counsel's individual clients are not permissible when the case is pursued as a class action.  Generally, when a person "join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement."  Officers for Justice [v. Civil Service Commission of the City and County of San Francisco, 688 F.2d 615, 632 (9th Cir. 1928).  Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations.

. . . .

We have, however, approved incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); see also In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 incentive awards to five named plaintiffs out of a class potentially numbering more then 4 million in a settlement of $3 million); Cook, 142 F.3d at 1016 (approving, in the context of a recovery of more than $14 million, an incentive payment of $25,000 to one named plaintiff who "spent hundreds of hours with his attorneys and provided them with 'an abundance of information'"); Continental Illinois, 962 F.2d at 571-72 (upholding a district court's rejection of a proposed $10,000 award to a named plaintiff "for his admittedly modest services"); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 awards for one named representative of each of nine named plaintiff classes involving more than 22,000 claimants in a settlement of $22 million).  In the proposed consent decree in this case, 29 named class representatives are designated to receive payments totaling $890,000.  Compared to the three cases just mentioned, the different orders of magnitude in the present case concerning the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment -- here up to $50,000, with an average of more than $30,000 -- are obvious.  Nevertheless, named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments.  The district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  Cook, 142 F.3d at 1016.

Staton v. Boeing Co., 327 F.3d 938, 975-77.

## ANALYSIS

The Court approves the Proposed Settlement Agreement in part and denies it in part.  The

Court denies the proposed incentive award to Robles as a named class representative, because the Court does not believe an award is justified.  With this modification, the Court concludes that the Proposed Settlement Agreement reflects a reasonable compromise of issues in dispute, that the settlement was reached in an adversarial context in which competent and experienced counsel represented Robles, and the totality of the proposed settlement is fair and reasonable.

I.    **THE COURT DENIES THE INCENTIVE AWARD FOR ROBLES AS THE NAMED CLASS REPRESENTATIVE.**

Robles requests that he be paid an incentive award as the class representative, arguing that his efforts justify an incentive award.  Robles initially sought an incentive award of $9,909.60 in addition to his $5090.40 award for compensatory and punitive damages under the Proposed Settlement Agreement, for a total award of $15,000.00.  After removing LeBlanc, the compensatory and punitive damages award for the remaining Collective Action Settlement Members increased when the amount allocated to LeBlanc's award was redistributed to the other Members.  Robles' compensatory and punitive damages award increased to $5130.21, leading the parties to reduce his proposed incentive award to $9869.79, keeping his total award under the Proposed Settlement Agreement at $15,000.00.

The proposed incentive award would come from the $500,000.00 fund that the Defendants have agreed to provide for settling Collective Action Settlement Members' claims.  Because the sum of all of the Collective Action Settlement Members' claims exceeds the $500,000.00 limit, each Collective Action Settlement Members' award is proportionately reduced.  Because Robles' proposed incentive award would also come from the $500,000.00 fund, the other Collective Action Settlement Members' awards would be further proportionately reduced to allocate the $9869.79 from the $500,000.00 fund.

In the Motion, Robles contends that his efforts in prosecuting this case justify an incentive award:

> Robles will receive this incentive award for extraordinary participation in the litigation, which benefitted all Collective Action Settlement Members. For example, Mr. Robles initiated the lawsuit and spent a substantial amount of time assisting counsel in investigating and prosecuting his claims and those of the other class members he has successfully represented. Mr. Robles also gave a deposition. This incentive award is reasonable and fair based on Mr. Robles' efforts, the individuals that will benefit from the settlement, and the overall success of the litigation.

Motion at 6-7. In Response to the Court's January 18, 2011 Minute Order notifying the parties that the Court is concerned about the proposed incentive award, Robles elaborated on his justification. In Robles' Memorandum in Support of Proposed Incentive Award, he contends that the proposed incentive award recognizes his substantial individual contributions to and sacrifices for the prosecution of this case, and that the incentive award is consistent with the case law. See Memorandum in Support of Proposed Incentive Award at 1-3. Robles asserts that he worked diligently with his counsel throughout this litigation, including meeting with counsel numerous times, gathering information pertaining to the factual allegations of the Complaint and to other putative class members' experiences, submitting to a deposition, and traveling to Santa Fe to attend and to actively participate in mediation. See Memorandum in Support of Proposed Incentive Award at 3. Robles further contends that, although he kept no records of his time, his counsel estimate that he expended at least forty and perhaps more than sixty hours assisting in the investigating and prosecuting this case. See Memorandum in Support of Proposed Incentive Award at 3. Robles further contends that, having worked in the automotive repair industry in Albuquerque both before and since his employment for Brake Masters, Robles assumed the risk that filing this case might lead to his being "black-listed" among employers in the industry. Memorandum in Support of Proposed

Incentive Award at 3.  Robles asserts that, absent his efforts, the proposed settlement presently before the Court would not have been possible.  See Memorandum in Support of Proposed Incentive Award at 3.

The Defendants, acknowledging that they agreed to each of the settlement terms as set forth in the Motion and the Supplemental Joint Motion, including the incentive payment to Robles, "take no position as to the legal authority for the amount of the incentive payment."[3]  Motion and the Supplemental Joint Motion at 1.  The Defendants further represented that they have no objection to the Court exercising its discretion to modify Robles' incentive award without modifying the Defendants' total payout under the Proposed Settlement Agreement.  See Defendants filed their Notice Regarding Proposed Incentive Award at 1.

The Court does not believe an incentive award of Robles is justified.  The Tenth Circuit recognizes limited circumstances in which a court may authorize an incentive award for a class representative.  In UFCW Local 880 -- Retail Food Employers Joint Pension Fund v. Newmont Mining Corp., the Tenth Circuit stated:

> "Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives," but there is no need for such an award "if at least one [class member] would have stepped forward without the lure of an 'incentive award.'"  In re Synthroid Mktg. Litig., 264 F.3d 712, 722-23 (7th Cir. 2001).  Moreover, a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.  See Parker v. Time Warner Entm't Co., L.P., 631 F. Supp.2d 242, 279 (E.D.N.Y. 2009) ("The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the

---

[3] The Defendants do not indicate if they take a position on the legal authority whether an incentive award is justified.  The Defendants appear not to want to undermine the Proposed Settlement Agreement, or take a position that may suggest they are acting in bad faith.  The Court understands that position, but notes that the Defendants do not provide any legal authority in support of the incentive award.

lawsuit." (quotation omitted)); <u>Varacallo v. Mass. Mut. Life Ins. Co.</u>, 226 F.R.D. 207, 257 (D.N.J. 2005) (same).

352 F. App'x at 235-36 (alteration in original).

Robles points to a number of cases where courts approved comparably sized and larger incentive awards. The Court does not dispute that "[i]ncentive awards are fairly typical in class action cases." <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d at 958-59 (citing 4 W. Rubenstein, A. Conte & H. Newberg, <u>supra</u> § 11:38, at 80-81 ("[I]ncentive awards are granted in only about a quarter of class suits . . . ."); T. Eisenberg & G. Miller, <u>supra</u>, at 1308 (finding twenty-eight percent of settled class actions between 1993 and 2002 included an incentive award to class representatives))(emphasis omitted). Nonetheless, reviewing whether an incentive award is justified is a highly individualized inquiry, in which the proponents of the award face a substantial burden. <u>See Staton v. Boeing Co.</u>, 327 F.3d at 977 ("The district court must evaluate their awards individually . . . ."); <u>Hadix v. Johnson</u>, 322 F.3d at 897 ("[A]pplications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." (citing 2 H. Newberg & A. Conte, <u>supra</u> § 11.38, at 80-81)); <u>Cohen v. Resolution Trust Corp.</u>, 61 F.3d at 728 ("When a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness.")(citation and internal quotation marks omitted); <u>Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.</u>, 76 F.R.D. at 180 ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

As an initial matter, Robles offers no argument or evidence, competent or otherwise, that

other class representative were not forthcoming, and that an incentive award is justified for bringing

a representative forward.  See UFCW Local 880 -- Retail Food Employers Joint Pension Fund v.

Newmont Mining Corp., 352 F. App'x at 235 ("'Incentive awards [to class representatives] are

justified when necessary to induce individuals to become named representatives,' but there is no

need for such an award 'if at least one [class member] would have stepped forward without the lure

of an "incentive award."'" (quoting In re Synthroid Mktg. Litig., 264 F.3d at 722-23))(modification

in original).  Thus, there is no sound basis in the factual record for the first reason for an incentive

award under Tenth Circuit law -- the need to secure at least one class representative.  Rather, Robles

contends that an incentive award is justified, because of his efforts and the risk he took in

prosecuting this case.

Rather than trying to come within the "induced" justification, Robles tries to come within

the justification for "any additional effort expended by the individual for the benefit of the lawsuit."

UFCW Local 880 -- Retail Food Employers Joint Pension Fund v. Newmont Mining Corp., 352 F.

App'x at 235-36.  In Cook v. Niedert, the Seventh Circuit set forth factors that courts should

consider to determine whether an incentive award is warranted.  Relevant factors include the actions

the class representative has taken to protect the interests of the class, the degree to which the class

has benefitted from those actions, the amount of time and effort the class representative has

expended in pursuing the litigation, and the risks the class representative faced in pursuing the

action.  See Cook v. Niedert, 142 F.3d at 1016.  In that case, the Seventh Circuit approved a

$25,000.00 incentive award to a class representative, because of "the risks he faced in bringing the

case and the time he spent pursuing it."  142 F.3d at 1016.  The class representative was "a truck

driver and participant in the Teamsters Local 705 Health and Welfare Fund" who filed a class action

-18-

"against the Fund, the International Brotherhood of Teamsters Local 705, and the trustees of both entities," alleging mismanagement of the fund in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 to 1461. Cook v. Niedert, 142 F.3d at 1008-09. The parties entered into a settlement agreement, which provided that the Fund would undergo extensive structural reforms and receive a cash payment of over thirteen-million dollars. Cook v. Niedert, 142 F.3d at 1009.

In contrast to the class representative in Cook v. Niedert, who "brought a suit that resulted in structural reforms to the Health & Welfare Fund as well as a cash recovery of more than $13 million[;] . . . spent hundreds of hours with his attorneys and provided them with an 'abundance of information,'" 142 F.3d at 1016, Robles spent forty to sixty hours working on this case, working with counsel, gathering information, giving a deposition, and attending mediation, resulting in a $500,000.00 recovery for the Collective Action Settlement Members. See Memorandum in Support of Proposed Incentive Award at 3.

While the Tenth Circuit's statement, "any additional effort expended by the individual for the benefit of the lawsuit," is not self defining, the Court believes this language should be interpreted narrowly rather than broadly. Almost all class plaintiffs spend more time on the lawsuit than do the other class members. so the Court is reluctant to interpret the Tenth Circuit's language to mean any additional effort greater than other class members' efforts, or else all class cases would justify an incentive award, and the Court does not believe that interpretation would be consistent with the language, tenor, or spirit of the language in UFCW Local 880 -- Retail Food Employers Joint Pension Fund v. Newmont Mining Corp. Instead, the better construction of the Tenth Circuit's language is that the Tenth Circuit authorizes an incentive award when the class representatives'

efforts are greater than the typical class representative's efforts and/or greater than the efforts a class representative would have incurred if his or her action were an individual action and not a class action.

Moreover, in contrast to the class representative in Cook v. Niedert, a truck driver and union member suing his union, who "reasonably feared workplace retaliation," 142 F.3d at 1016, Robles was not employed by or dependant on the Defendants when he brought this action.  Instead, he contends that he risked being "black-listed" among employers in the automotive repair industry in Albuquerque or elsewhere, in which he worked both before and since his employment with Brake Masters.  Support of Proposed Incentive Award at 3.  Robles offers no evidence to support his speculation that other employers in the automotive repair industry might retaliate against him for challenging the Defendant's classification of assistant managers and floating managers at Brake Masters.  See Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410 ("[I]t does not appear that . . . , as a former employee, [the named plaintiff] suffered or risked any retaliation by Aetna Plywood.").  Because Robles contributed less effort compared to that of other class representatives in cases in which an incentive award was approved, and did not occur measurably, if any, more effort than if he had brought the lawsuit as an individual action rather than as a class action, faced only speculative and attenuated risk, and produced an award of less magnitude for the Collective Action Settlement Members than the class representative did for the class members in Cook v. Niedert, the Court does not find that Cook v. Niedert supports granting Robles an incentive award.

Robles is more similar to the named plaintiff in Montgomery v. Aetna Plywood, Inc., in which the Seventh Circuit affirmed a district court's denial of a $30,000.00 incentive award for a class representative, because of: (i) "counsel's failure to make any serious argument in favor of

granting such an award"; (ii) "counsel's failure to include in the most recent notice to the class adequate information regarding counsel's plan to seek an incentive award"; and (iii) "the possibility that counsel could pay an incentive award out of the fees awarded it." Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410. The Seventh Circuit asserted that the "last reason . . . is not a particularly persuasive one," but "the other two carry significant weight." Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410.

These same factors militate in favor of rejecting the incentive award in this case. The first factor, that counsel failed to make any serious argument in favor of granting such an award, is applicable in this case. The Seventh Circuit in Montgomery v. Aetna Plywood, Inc. asserted that

> the case for granting the lead plaintiff in this case an incentive award is not so overwhelming as to remove any doubt about whether an award would be appropriate. While the lead plaintiff was the only named plaintiff, was subjected to a rough deposition, and was portrayed by the Montgomery defendants in an unfavorable light during the litigation, it does not appear that he had to devote an inordinate amount of time to the case or that, as a former employee, he suffered or risked any retaliation by Aetna Plywood. Accordingly, we conclude that the district court did not abuse its discretion in refusing to grant the lead plaintiff an incentive award.

231 F.3d at 410. Despite Robles' counsel's characterization of Robles' efforts as substantial and essential to the parties reaching the Proposed Settlement Agreement, Robles' specific contributions to which they point do not demonstrate that Robles "devote[d] an inordinate amount of time to the case or that, as a former employee, he suffered or risked any retaliation." 231 F.3d at 410. The specific allegations Robles offers in support of his contention that an incentive award is justified are that he initiated the lawsuit and that he spent between forty and sixty hours assisting counsel, meeting with his attorneys, gathering facts, and attending a deposition and mediation. See Support of Proposed Incentive Award at 3. Robles further contends that he risked being "black-listed" among employers in the automotive repair industry. Support of Proposed Incentive Award at 3. It

-21-

is unclear that spending forty to sixty hours constitutes more of a contribution from Robles than a typical named plaintiff in a lawsuit.  Cf. Hadix v. Johnson, 322 F.3d at 898 ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." (emphasis added)).  Being deposed and attending mediation are expected activities of all plaintiffs bringing lawsuits, and do not amount to "inordinate" effort.  Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410.  See Matter of Continental Ill. Secs. Litig., 962 F.2d 566, 571-72 (affirming a denial of an incentive award "to the named plaintiff for his admittedly modest services," where the named plaintiff "was deposed, which took a few hours, and bore a slight risk of being made liable for sanctions, costs, or other fees should the suit go dangerously awry").

The second factor, "counsel's failure to include in the most recent notice to the class adequate information regarding counsel's plan to seek an incentive award," Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410, also weighs against the Court's approval of an incentive award for Robles in this case.  In Montgomery v. Aetna Plywood, Inc., the notice to potential Collective Action Settlement Members "mention[ed] the incentive award in passing by noting that the actual recovery of the class 'may be . . . reduced by the requested attorneys fees, costs, expenses, and an incentive award to the named plaintiff,'" although "[t]he notice d[id] not specify the amount of the incentive award nor d[id] it specify that objections could be raised to the incentive award." Montgomery v. Aetna Plywood, Inc., No. 95 C 3193, 1999 WL 172313, at *7 (N.D. Ill. Mar. 18, 1999), modified on other grounds by Montgomery v. Aetna Plywood, Inc., No. 95 C 3193, 1999 WL 299898 (N.D. Ill. May 03, 1999).  In contrast to this minimal notice, which the Seventh Circuit stated "carr[ied] significant weight" in its decision to affirm the district court's rejection of the incentive award, Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410, the Notice the parties sent to the potential

Collective Action Settlement Members made no mention of an incentive award to Robles, and therefore did not indicate that his settlement award would be taken proportionately from the other Collective Action Settlement Members' awards.  The Notice stated the formula the parties would use to determine each Collective Action Settlement Members' award, that the award may be proportionately reduced if the total of all awards exceeded $500,000.00, and that the Collective Action Settlement Members "will not have to pay attorney's fees, as they are addressed by the overall settlement."  Notice at 2-3.  The parties' failure to notify the Collective Action Settlement Members of the proposed incentive award "carr[ies] significant weight" in the Court's decision to reject the proposed incentive award.  Montgomery v. Aetna Plywood, Inc., 231 F.3d at 410.

Another factor that weighs in favor of the Court's rejection of the proposed incentive award is that, not only does Robles seek to receive preferential treatment over the other Collective Action Settlement Members by asking for an incentive award, but his proposed incentive award is taken proportionately from the other Collective Action Settlement Members' awards.  See Cohen v. Resolution Trust Corp., 61 F.3d at 728 ("When a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness."  (citation omitted)); Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 180 (S.D.N.Y. 1977)("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").  Unlike the attorneys' fees, the proposed incentive award would be taken from the fund the Defendants agreed to establish for paying the Collective Action Settlement Members' awards, which is limited to $500,000.00 under the Proposed Settlement Agreement.  See Motion at 5-6.  The sum of all the Collective Action Settlement Members' awards

exceeds $500,000.00.  Consequently, each class member's award is proportionately reduced until the sum of all Collective Action Settlement Members' awards reaches the $500,000.00 limit. Because Robles' proposed incentive award would come from the limited $500,000.00 pie, his benefit would come at the detriment of the other Collective Action Settlement Members, whose awards would be proportionately reduced to allocate funds for Robles' incentive award.  Under the proposed incentive payment, therefore, the class representative would not only be treated differently than other members of the class, but he would benefit at their expense.  See Staton v. Boeing Co., 327 F.3d at 976 ("[S]pecial rewards for counsel's individual clients are not permissible when the case is pursued as a class action.  Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'"  (citing Officers for Justice v. Civil Service Commission of the City and County of San Francisco, 688 F.2d at 632)).

Moreover, the Court is reluctant to expand the Tenth Circuit's language in UFCW Local 880 -- Retail Food Employers Joint Pension Fund v. Newmont Mining Corp. to include other rationales for incentive awards or to interpret the Tenth Circuit's three justifications broadly to include incentive awards for cases that do not fit squarely within those three justifications.  This approach is a product of the Court's sensitivity to the need not to create artificial incentives for would-be named plaintiffs to bring suits.  Courts "have denied preferential allocation on the grounds that the named plaintiff may be tempted to settle an action to the detriment of the class or come to expect a 'bounty' for bringing suit."  4 W. Rubenstein, A. Conte & H. Newberg, supra § 11:38, at 80-81 (footnote omitted).

> Indeed, "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  Weseley v. Spear, Leeds & Kellogg, 711 F.Supp. 713, 720 (E.D.N.Y.

1989); see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

. . . .

Such special rewards for counsel's individual clients are not permissible when the case is pursued as a class action. Generally, when a person "join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement." Officers for Justice, 688 F.2d at 632. Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations.

Staton v. Boeing Co., 327 F.3d at 975, 976 (emphasis added). "By bringing an action as a class action, a named plaintiff disclaims any right to preferred treatment in settlement." In re Gould Securities Litigation, 727 F. Supp. 1201, 1209 (N.D. Ill. 1989)(citing Officers for Justice v. Civil Serv. Com'n, 688 F.2d 615, 632 (9th Cir. 1982)("There is nothing to differentiate the group of named plaintiffs from the individual class members with respect to the potential recovery of monetary relief for emotional and physical distress."), cert. denied, 459 U.S. 1217 (1983); Kincade v. General Tire & Rubber Co., 635 F.2d 501, 508 (5th Cir. 1981)). "That disclaimer applies even though the named plaintiff undertook extra responsibilities during the litigation." In re Gould Securities Litigation, 727 F. Supp. at 1209.

This concern is not motivated by policy concerns alone. Recent academic debate has called into question the constitutionality of certain class action remedies, in part because some remedies transform the underlying substantive law. See, e.g., Myriam Gilles & Gary B. Friedman, Exploding the Class Action Agency Costs Myth: the Social Utility of Entrepreneurial Lawyers, 155 U. Pa. L. Rev. 103 (2006); Martin H. Redish, Peter Julian & Samantha Zyontz, Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis, 62 Fla. L. Rev. 617

(2010). Sam Yospe, <u>Cy Pres Distributions in Class Action Settlements</u>, 2009 <u>Colum. Bus. L. Rev.</u>

1014 (2009).

> It has somehow become common practice among many courts, scholars, and members of the public to view the modern class action as a free-standing device, designed to do justice and police corporate evildoers.
>
> . . . .
>
> It must be remembered that a class action suit does not "arise under" Rule 23 of the Federal Rules of Civil Procedure.  Rather, it arises under the substantive law being enforced; Rule 23 merely facilitates that enforcement procedurally.  As a matter of both constitutional separation of powers and the terms of the Rules Enabling Act, a court may not employ a rule of procedure to alter the essence of the underlying substantive right being enforced.  <u>It is therefore constitutionally inappropriate for a court, under the guise of the class action procedure, to alter the underlying structure of the substantive law that the class procedure is intended to enforce</u>.

Martin H. Redish, Peter Julian & Samantha Zyontz, 62 <u>Fla. L. Rev.</u> at 632 (emphasis added).  The

Court need not, in this case, decide whether incentive awards are unconstitutional in state law class

actions and/or federal law class actions.  But the Court should avoid what may be difficult

constitutional issues by the multiplication of the rationales for incentive awards beyond what the

Tenth Circuit has already specifically recognized in <u>UFCW Local 880 -- Retail Food Employers</u>

<u>Joint Pension Fund v. Newmont Mining Corp.</u>

Incentive awards also have the potential to transform the underlying substantive law.

Incentive awards compensate class representatives for prosecuting claims on behalf of another.

Historically, qui tam suits, or bounty hunter suits, are used to provide an incentive to individuals to

brings suits to advance the interests of others.  <u>See</u> <u>Riley v. St. Luke's Episcopal Hosp.</u>, 252 F.3d

749, 751 & n.1 (5th Cir. 2001)("Riley proceeded with the lawsuit although the government exercised

its right not to intervene . . . .   In exchange, qui tam plaintiffs, such as Riley, may recover up to 30

percent of the proceeds of an action, in addition to reasonable attorneys' fees and costs, if the action is successful." (citations omitted)); M. Redish, Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications, 18 Sup. Ct. Econ. Rev. 77, 96 (2010)("In these actions, private plaintiffs are authorized, under defined circumstances, to sue to assert state remedial interests, and recover a portion of whatever damages are recovered for harm to the state, even though the private plaintiffs have not suffered injury in fact."). In the FLSA, Congress, in providing administrative and criminal remedies, along with a private cause of action for injured parties, and not qui tam suits, made a deliberate selection of enforcement mechanisms. See 29 U.S.C.A. § 216(a)-(c). The courts must be careful not to second guess Congress' selection through incentive awards, thereby illegitimately transforming the underlying substantive law from a compensatory model to a bounty hunter model. This caution is particularly true given that Congress has expressed hostility to incentive awards in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which precludes incentive awards in securities-fraud litigation. See 15 U.S.C. § 78u-4(a)(4)("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class.").

In sum, the Court denies the proposed incentive award for Robles. The Court does not believe that Robles has put forth more effort or incurred more risk than many other plaintiffs. The parties did not notify the Collective Action Settlement Members of the proposed incentive award. The proposed incentive award would be taken proportionately from the other Collective Action Settlement Members' awards and thus benefitting Robles at their expense. Because of these considerations, the Court does not believe an incentive award for Robles is justified. Moreover, the

Court is concerned that incentive awards, except in the three situations the Tenth Circuit has recognized, may have the undesirable consequence of tempting parties to seek to be named plaintiffs "to settle an action to the detriment of the class or come to expect a 'bounty' for bringing suit." 4 W. Rubenstein, A. Conte & H. Newberg, supra § 11:38, at 80-81 (footnote omitted). The Court is also concerned that, because incentive awards have the potential to transform the underlying substantive law through a procedural device, they may lack a sound legal and constitutional footing, and violate the Rules Enabling Act, 28 U.S.C. § 2072(b)("Such rules shall not abridge, enlarge or modify any substantive right.").

## II.   THE COURT OTHERWISE APPROVES THE PROPOSED SETTLEMENT AGREEMENT.

The Court otherwise approves that Proposed Settlement Agreement. Parties may settle FLSA claims when they are supervised by the Secretary of Labor, under 29 U.S.C. § 216(c), or when a court reviews and approves a settlement in a private action. In Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

679 F.2d at 1354. A district court, when reviewing a proposed settlement of an FLSA claim, should "scrutiniz[e] the settlement for fairness," and decide whether the proposed settlement is a "fair and

reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores v. United States, 679 F.2d at 1353-55. The court in Lynn's Food Stores v. United States essentially established four factors to guide the district court in determining whether to approve a FLSA Settlement: (i) was the settlement achieved in an adversarial context?  (ii) were the plaintiffs represented by attorneys who can protect their rights?  (iii) does the settlement reflect a reasonable compromise over issues that are actually in dispute? and (iv) is the settlement fair?  Lynn's Food Stores v. United States, 679 F.2d at 1353-54.

The Court concludes that theses factors are satisfied in this case.  The Motion, along with the Declarations of Jeremi Young (executed January 7, 2011), filed January 8, 2011 (Doc. 44-2), and Tim Newsom (executed January 7, 2011), filed January 8, 2011 (Doc. 44-3), reveal that the settlement was negotiated at arm's length by experienced counsel concerning bona fide disputes between their clients with respect to liability and the amounts due to the Collective Action Settlement Members, assuming FLSA violations had occurred.  See Young Decl. ¶ 5-7, at 2-3; Newsom Decl. ¶ 9, at 4.  The case presented numerous contested issues related to the Assistant Managers' and Floating Managers' classification under the FLSA, the proper limitations period applicable to those claims, and whether certain legal defenses provided the Defendants with a complete or partial defense to liability.  See Young Decl. ¶ 5-7, at 2-3; Newsom Decl. ¶ 9, at 4.

Furthermore, the Young Declaration establishes that, in counsel's extensive experience, the settlement is fair, just, and adequate to settle the claims of the Collective Action Settlement Members.  See Young Decl. ¶ 7, at 2-3.  The overall settlement and the monetary amounts that will be paid to each member of the Collective Action Settlement Members represent a fair and reasonable compromise of the disputed issues in this case.  Had this case continued in litigation, the Collective

Action Settlement Members may have recovered less or perhaps nothing at all, and the settlement will facilitate the prompt payment of their claims.

The Court also finds that the attorneys' fees under the Proposed Settlement Agreement are reasonable.  Under the Proposed Settlement Agreement, Robles' counsel will receive $120,000.00 in attorney's fees, expenses, and costs.  Under the Proposed Settlement Agreement, attorneys' fees are not taken from the $500,000.00 award fund, but are paid from a separate allocation.  The settlement also includes a payment of $19,363.55 from the Defendants to Rust Consulting.  The Common Fund is $639,363.00, with Attorneys' fee amounting to 18.77% of the Common Fund.  The Tenth Circuit has held that a Court may approve attorneys' fees based on a percentage of the common fund bestowed upon the class, provided the fees are reasonable.  See Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir. 1988).  The Court believes the percentage is reasonable. The percentage is less than half Robles' counsels' contingency fee, which would have been at least 40%.  See Young Decl. ¶ 11, at 3.  The percentage is also comfortably within the range that other courts within the Tenth Circuit have approved.  See, e.g., Sanders v. MPRI, Inc., No. 5:08-cv-00345-R (W.D. Okla. July 9, 2009)(approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); McNeely v. Nat'l Mobile Health Care, LLC, No. CIV-07-933-M, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008)(approving fees equal to 33% of total settlement); Ramah Navajo Chapter v. Norton, 250 F. Supp. 2d 1303, 1316 (D. N.M. 2002)(Hansen, J.)("Under the percentage-of-the-fund method, an appropriate starting point is the 25% benchmark established by the case law, with adjustments to be made up or down based on the factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)."); Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins., Nos. CIV 89-822-T and CIV

-30-

89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993)("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); In re Public Service Co. of New Mexico, No. 91-0536M, 1992 WL 278452 (S.D. Cal. 1992)(approving a fee award of 33.4% on a $33 million recovery).  The Court therefore concludes that the fees to be awarded Robles' counsel are reasonable, and approves the payment of Attorneys' fee, litigation expenses, and court costs as provided in the Motion.

Having rejected Robles' proposed incentive award, the Court concludes that the Proposed Settlement Agreement, as fully described in the Motion and Supplemental Joint Motion, is fair to all parties, and reasonably resolves a bona fide disagreement between the parties concerning the merits of the claims asserted in the action, and demonstrates good-faith intention by the parties that the claims be fully and finally resolved.

**IT IS ORDERED** that: (i) the Joint Motion for Approval of Collective Action Settlement and Dismissal, filed January 8, 2011 (Doc. 44) as amended by the Supplemental Joint Motion for Approval of Collective Action Settlement and Dismissal, filed January 25, 2011 (Doc. 49), is granted in part and denied in part; (ii) the parties' proposed incentive award for Plaintiff Roger Robles is denied; (iii) the Proposed Settlement Agreement is otherwise approved; (iv) the class members awards will be distributed according to the payment schedule attached to the Court's Memorandum Opinion and Order; (v) the action is dismissed with prejudice; and (vi) each party shall bear his/her/its own costs and attorneys' fees except as otherwise provided in the Proposed Settlement Agreement.

_____
UNITED STATES DISTRICT JUDGE

-31-

*Counsel:*

Jeremi K. Young
Tim Newsom
The Young Law Firm, P.C.
Amarillo, Texas

      *Attorneys for the Plaintiffs*

Stanley K. Kotovsky , Jr.
Tinnin Law Firm, P.C.
Albuquerque, New Mexico

-- and --

Tibor Nagy , Jr
Ogletree Deakins Nash Smoak & Stewart P.C.
Tucson, Arizona

-- and --

Ann Marie Painter
Rachel Morgan
Morgan, Lewis & Bockius, LLP
Dallas, Texas

      *Attorneys for Defendants Brake Masters Systems, Inc.*
        *and Brake Masters of New Mexico, Inc.*

Lorna M. Wiggins
Albuquerque, New Mexico

-- and --

Whitney Warner
Albuquerque, New Mexico

-- and --

Ann Marie Painter
Rachel Morgan
Morgan, Lewis & Bockius, LLP
Dallas, Texas

     *Attorneys for Defendants Brake Masters Systems, Inc.; Brake Masters*
       *Holdings NMX, Inc.; and Brake Masters Holdings NMX, Inc.*